### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF KANSAS

MATTHEW FUNDERBURK,

   *Plaintiff*,

v.

TRANS UNION, LLC, WEBBANK d/b/a
FINGERHUT, and BRIDGECREST
ACCEPTANCE CORPORATION,

   *Defendants*.

Case No. 25-1260-EFM-GEB

### MEMORANDUM AND ORDER

Before the Court is Defendant Bridgecrest Credit Company, LLC ("Bridgecrest")'s Motion to Compel Arbitration of Plaintiff Matthew Funderburk's claim against Bridgecrest under the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et. seq*. ("FCRA") (Doc. 14). Bridgecrest asks this Court to compel arbitration and stay all proceedings under the terms of an Arbitration Agreement connected to a Retail Installment Contract and Security Agreement ("Contract") between Carvana, LLC ("Carvana") and a Matthew Reed. Funderburk filed no response to Bridgecrest's Motion. Because Bridgecrest fails to meet its burden to show an enforceable Arbitration Agreement between it and Funderburk, the Court denies the Motion.

### I.  Factual and Procedural Background

On August 25, 2020, Matthew Reed entered into the Contract with Carvana for the purchase and financing of a 2013 Nissan Maxima. Bridgecrest, an auto lender with its principal place of business in Arizona, serviced the Contract, including financing for $11,679.75 at an

annual percentage rate of 22.541%. The sale appears to have occurred in Kansas because "Retail Installment Contract-KS" appears in the Contract's footer, and there is an option to apply the Kansas Uniform Consumer Credit Code.

Reed also signed the Arbitration Agreement which provides "[t]his Agreement is part of, and is hereby incorporated into, the Contract." The Arbitration Agreement defines "Contract" as "the Retail Purchase Agreement . . . and/or the related Retail Installment Contract and Security Agreement . . . [Reed] signed with us in connection with this purchase." It also defines "Us/We/Our" as "Carvana, any purchaser, assignee or servicer of the Contract."

Under the Arbitration Agreement, "any Claim shall be resolved, on [Reed's] election or [Bridgecrest's] by arbitration." The Arbitration Agreement defines "Claim" as "any claim, dispute our [sic] controversy between [Reed] and [Bridgecrest] arising from or related to" twelve listed topics including "The Contract," "[Reed's] credit applications," and "[Reed's] personal information." Further, the Arbitration Agreement provides that "'Claim' has the broadest reasonable meaning" but "'Claim' does not include a dispute about validity, enforceability, coverage, or scope of this Agreement" and "any such dispute is for a court, and not an arbitrator to decide." But "[t]his exclusion from the definition of a 'Claim' does not apply to any dispute or argument concerning the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide." Finally, the Arbitration Agreement states the Federal Arbitration Act ("FAA") governs it because "the Contract involves a transaction in interstate commerce."

The Arbitration Agreement permitted Reed to reject by sending a written "Rejection Notice" within 30 days of signing the Contract. He did not do so.

On November 14, 2025, Funderburk filed a Complaint alleging someone stole his identity and opened several accounts without his knowledge or authorization, including the Bridgecrest car-financing account. He claims to discover his identity was stolen and the unauthorized accounts appeared on his credit report in or around October 2024. As to Bridgecrest, specifically, Funderburk alleges it violated the FCRA and harmed Funderburk when it failed to conduct a reasonable investigation and continued inaccurately reporting the Bridgecrest car-financing account after Funderburk disputed the account's accuracy with Trans Union, LLC.

On February 11, 2026, Bridgecrest filed this Motion to Compel Arbitration. Funderburk filed no response.[1]

## II.    Legal Standard

Arbitration is a matter of contract, and a party must arbitrate only those disputes they agreed to arbitrate; courts must therefore enforce arbitration agreements according to their terms.[2] Whether the parties agreed to arbitrate a dispute is an issue for judicial determination unless the parties clearly and unmistakably provide otherwise.[3] Concerning enforceability, arbitration provisions are treated as severable from the overarching contract unless the party opposing arbitration challenges the arbitration provision's enforceability specifically.[4] A defendant seeking to compel arbitration bears the initial burden to show enough evidence of an enforceable arbitration

---

[1] Shortly after Bridgecrest filed the present Motion, on February 18, 2026, Funderburk's counsel moved to withdraw pursuant to D. Kan. Rule 83.5.5(a). The Court denied this motion for lack of proof of personal service on the client (Funderburk) pursuant to Federal Rule of Civil Procedure 5(b) as required by D. Kan. Rule 83.5.5(a)(4). Doc. 17. Thus, Funderburk remains represented. Nonetheless, he did not respond to the present Motion.

[2] *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986) (citation omitted); *WIHO, LLC v. Hubbauer*, 957 F. Supp. 2d 1302, 1304 (D. Kan. 2013) (citation omitted); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citation omitted).

[3] *AT&T Techs.*, 475 U.S. at 649 (citations omitted); *Gratzer v. Yellow Corp.*, 316 F. Supp. 2d 1099, 1103 (D. Kan. 2004) (citation omitted).

[4] *Granite Rock Co. v. Int'l Bhd. of Teamsters*, 561 U.S. 287, 301 (2010) (citations omitted).

agreement, and the plaintiff's failure to arbitrate.[5] If the defendant meets this burden, the plaintiff must show a genuine issue of material fact as to the agreement's enforceability.[6]

The FAA provides that arbitration agreements are enforceable subject to the same legal grounds for the revocation of any contract.[7] A federal district court may compel arbitration when it would have jurisdiction in the underlying dispute.[8] Finally, a court must stay litigation on matters the parties have agreed to arbitrate.[9]

### III.    Analysis

Bridgecrest's Motion requires the Court to discern the Arbitration Agreement's governing law and whether its terms are enforceable. Thus, the Court addresses each requirement in turn to determine whether the proceedings should be stayed pending arbitration.

### A.    Arbitration

#### 1.    The FAA Governs the Arbitration Agreement

Before the Court can decide whether the Arbitration Agreement is enforceable, it must first discern the applicable law. Bridgecrest argues the FAA governs the Arbitration Agreement because the Contract involves interstate commerce. "Commerce" for FAA purposes encompasses transactions "within the flow of interstate commerce," as it is interpreted to fit within the reach of Congress' Commerce Clause powers.[10]

Here, the Contract involved the interstate sale of a car. The transaction occurred in Kansas with Reed obtaining credit from Bridgecrest, located in Arizona, to finance the car. This

---

[5] *BOSCA, Inc. v. Bd. of Cnty. Comm'rs*, 853 F.3d 1165, 1177 (10th Cir. 2017) (citations omitted).

[6] *Id.*

[7] 9 U.S.C. § 2.

[8] § 4.

[9] § 3; *Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (citations omitted).

[10] *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 56 (2003) (quotation marks and citation omitted).

transaction undoubtedly exists within the flow of interstate commerce, as a company in one state loaned money to an individual in another state, which that individual must pay back to that company in the other state. Further, the Arbitration Agreement itself recognizes that the Contract involves interstate commerce. No evidence before the Court suggests otherwise. Thus, the Court holds the FAA governs the Arbitration Agreement.

### 2. The Arbitration Agreement's Terms Are Enforceable

Next, Bridgecrest argues that the Arbitration Agreement's terms are enforceable against Funderburk because the agreement was formed between them like any other contract, and that the Court may decide the issue. The Arbitration Agreement specifies that an arbitrable claim "does not include a dispute about validity, enforceability, coverage or scope of this Agreement . . . any such dispute is for a *court*, and not an arbitrator to decide."[11] This is the opposite of clearly and unmistakably showing that judicial determination is unavailable for whether the parties agreed to arbitrate a dispute. [12] Further, Funderburk filed no response objecting to judicial determination of its enforceability. Thus, the Court will take up the issue.

The Contract and Arbitration Agreement are signed by Carvana and Reed, and Reed did not opt out of the agreement within 30 days of signing it. But, as Bridgecrest bears the initial burden to show an enforceable arbitration agreement, it must show some evidence that Matthew Reed is Matthew Funderburk.[13] This is particularly an issue because Funderburk alleges identity theft in his Complaint. Aside from pointing to Reed's signatures as evidence of Funderburk's agreement, Bridgecrest fails to put forth evidence that they are the same person.[14] Accordingly,

---

[11] Doc. 14-1 at 8 (emphasis added).

[12] *AT&T Techs.*, 475 U.S. at 649; *Gratzer*, 316 F. Supp. 2d at 1103.

[13] *See BOSCA*, 853 F.3d at 1177 (citations omitted).

[14] Doc. 14-1 at 1.

Bridgecrest has not met its initial burden to show an enforceable arbitration agreement between it and Funderburk. Thus, the Court denies Bridgecrest's request to compel arbitration.

## B.   Stay of Proceedings

Courts must stay litigation on a matter the parties have agreed to arbitrate.[15] Because the Court concludes Bridgecrest has not shown that Funderburk agreed to arbitrate this matter, the Court need not stay the proceedings.

**IT IS THEREFORE ORDERED** that Defendant's Motion to Compel Arbitration (Doc. 14) is **DENIED**.

**IT IS SO ORDERED.**

Dated this 30th day of June, 2026.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE

---

[15] 9 U.S.C. § 3; *Smith*, 601 U.S. at 476 (citations omitted).